IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rosa Rodriguez-Monguio,                          :

                    Plaintiff         :         Civil Action 2:08-cv-00139

     v.                                         :

The Ohio State University,                        :         Magistrate Judge Abel

                   Defendant         :

## Order

This matter is before the Court on defendant The Ohio State University's ("OSU") August 31, 2010 motion for summary judgment (doc. 57).

### I.        Allegations in the Complaint

On May 5, 2005, OSU appointed plaintiff Dr. Rosa Rodriguez-Monguio ("Rodriguez") to a two-year term as a research associate member of the Center for Health Outcomes, Policy and Evaluation Studies ("HOPES"). Compl. at ¶ 9. On December 15, 2005, OSU appointed Dr. Rodriguez as a Clinical Assistant Professor ("CAP") with the School of Public Health Division of Health Services Management and Policy ("HSMP") *Id.* at ¶ 10. From 2005-2007, Dr. Rodriguez worked extensively with her significant other, Enrique Seoane-Vazquez ("Seoane"), an assistant professor with OSU's College of Pharmacy.  *Id.* at ¶ 11.

1

On August 22, 2005, Seoane filed a complaint concerning violations of OSU's policies on affirmative action, equal employment opportunity, and non-discrimination and harassment.  *Id.* at ¶ 12. On September 6, 2006, Seoane filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). *Id.* at ¶ 13. Dr. Rodiguez supported Seoane in filing and prosecuting his complaints. *Id.* at ¶ 14.

On October 1, 2006, OSU terminated Dr. Rodriguez's CAP appointment by terminating her salary and reappointing her to an unsalaried position. *Id.* at ¶ 15. On December 8, 2006, OSU downgraded her title from Clinical Assistant Professor to "lecturer" and terminated her HOPES appointment prematurely. *Id.* at ¶ 16.

On December 21, 2006, Dr. Rodriguez requested that Dr. Allard Dembe stop his discriminatory and retaliatory activities directed toward her and informed him that she had consulted an attorney. *Id.* at ¶ 17.  On January 3, 2007, Dr. Rodriguez filed a complaint with the OSU's Office of Human Resources alleging discrimination and retaliation against her. *Id.* at ¶ 18. The OSU employees involved in retaliating and discriminating against Rodriguez were Dr. Dembe, Dr. Milap Hahta and Dr. Raj Balkrishnan. *Id.* at ¶ 22. Evidence of OSU's discriminatory and retaliatory conduct includes redefining the terms and conditions of her employment, downgrading her title, terminating her HOPES appointment prematurely, refusing to renew her CAP appointment, not permitting her to serve as principal investigator on grants, obstructing her pursuit of grant funding and proposals, evicting her from her office, rejecting her

application for a tenure track position, and discouraging students from taking classes taught by her. *Id.* at ¶¶ 25-31.

## II.    Arguments of the Parties
### A.    Defendant

According to defendant, plaintiff held several appointments with OSU's College of Public Health ("CPH"), namely Visiting Scholar, Adjunct Assistant Professor, and Clinical Assistant Professor. Additionally, in May 2005, Dr. Rodriguez became a member of HOPES, a center located at CPH that conducts applied health service research studies. Membership in HOPES does not require any employment relationship with HOPES or OSU. Dembe Dep. 206:18-22. In 2004, Dr. Rodriguez approached the college and requested to teach courses without pay. She was given an unsalaried auxiliary appointment, which was renewed annually until she left OSU. *See* OSU Dep. Ex. 31, 33 & 35; Householder Dep. 32:17-33:16.

In June 2005, Dr. Arkes, interim director of HOPES, emailed Dr. Rodriguez concerning options to pay her as an employee of HOPES. Arkes Aff. ¶ 3; Exh. B. Dr. Rodriguez responded that she would provide half of her salary in the form of grants or research monies.  Arkes Aff. ¶ 3; Exh. D. Dr. Rodriguez was offered a one-year part-time paid position with HOPES and HSMP. On December 15, 2005, OSU offered Dr. Rodriguez a position as an an Auxiliary Clinical Assistant Professor, effective January 1, 2006 through December 31, 2006. The position was a 56% appointment with a total annual base salary of $39,000. OSU Dep. Ex 34. Dr. Rodriguez was informed that the

3

position carried no presumption of academic tenure or reappointment. *Id.* On October 30, 2006, Dr. Rodriguez was informed that her position would not be renewed. Doc. 57-13. In December 2006, it was agreed that Dr. Rodriguez would teach two classes in spring quarter of 2007. She would be paid $4,000 for each course. *Id.*

Dr. Rodriguez's last day at OSU was June 29, 2007. Compl. ¶2.

In September 2006, HSMP advertised a job posting for a tenure track faculty position. By October 17, 2006, HSMP received 14 applications. Dembe Aff. ¶ 4; Exh. G. By November 14, 2006, HSMP selected three strong candidates for the position. Dembe Aff. ¶ 4. Exh. I. Dr. Rodriguez did not apply for the position until December 13, 2006. Rodriguez Dep. 200:18; Dembe Aff. ¶ 6; OSU Dep, Ex. 38. Although Dr. Rodriguez was considered for the position, she was not selected.

On January 3, 2007, Dr. Rodriguez filed an internal complaint alleging discrimination and harassment by Dr. Dembe[1] and Dr. Nahata.[2] Compl. Ex. 7. On March 16, 2007, Dr. Rodriguez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and national origin discrimination from October 1, 2006 through January 12, 2007. Compl. Exh. 1.

---

[1]Dr. Allard Dembe became the director of HOPES in May 2006.

[2]Dr. Nahata is a professor at the OSU College of Pharmacy and the division chair for Dr. Seoane.

4

In June 2007, Dr. Rodriguez began to work for the University of Massachusetts at Amherst as a researcher, and in the fall of 2007, she assumed a tenure track position as an assistant professor. Rodriguez Dep. 39-40; 316:1-8.

Defendant argues that it is entitled to judgment as a matter of law on all factual allegations that are beyond the scope of Dr. Rodriguez's EEOC charge. According to defendant, many of Dr. Rodriguez's claims are based on allegedly discriminatory acts that occurred prior to the filing of her EEOC charge but were never mentioned, referenced, or alleged in her charge. Dr. Rodriguez's EEOC charge alleged that she was demoted from her salaried appointment as a Clinical Assistant Professor and that her application for a tenure track position was rejected. In this action, however, Dr. Rodriguez asserts three additional discriminatory actions taken by OSU: (1) she was terminated three months before the end of her one-year contract; (2) students were discouraged from taking classes taught by her; and (3) her HOPES appointment was terminated prematurely. OSU maintains that Dr. Rodriguez failed to exhaust her administrative remedies with respect to these acts.  The charge also indicates that the earliest date that the alleged discrimination took place was October 1, 2006, and the latest date was January 12, 2007. Any alleged acts of discrimination that took place outside of this time frame is also barred because it is beyond the scope of the EEOC charge. Additionally, the scope of the EEOC charge is limited to alleged acts of discrimination or retaliation that occurred 300 days prior to filing the charge. As a

result, any alleged discriminatory actions occurring more than 300 days before March 16, 2007 are also barred.

Defendant also argues that plaintiff's allegations that OSU terminated her paid appointment three months earlier than the contract term, that OSU discouraged students from taking her class, and that OSU terminated her HOPES membership are simply not true.

OSU further argues that it is entitled to judgment as a matter of law on Dr. Rodriguez's national origin discrimination claims because she cannot present any direct or indirect evidence of discrimination.

Dr. Rodriguez complains about two actions by OSU that occurred after her one-year paid appointment ended. OSU informed Dr. Rodriguez that she would no longer be able to serve as a principal investigator ("PI") on grants and that she would no longer be assigned an office at OSU. OSU argues that claims based on these two acts must fail because a Title VII plaintiff must demonstrate that she suffered an adverse employment action. These actions, however, occurred after her employment had ended. In fact, these actions were taken precisely because she was no longer an OSU employee.

OSU further argues that its decision not to hire Dr. Rodriguez into a tenure track position fails because Dr. Rodriguez cannot demonstrate the elements of a *prima facie* case of discrimination. OSU maintains that it selected another candidate who had better qualifications than Dr. Rodriguez. OSU also maintains that Dr. Rodriguez cannot

demonstrate a *prima facie* case of national origin discrimination, and, even if she could, OSU has shown a legitimate, non-discriminatory reasons for its actions.

OSU argues that it is entitled to judgment as a matter of law on Dr. Rodriguez's claim for discrimination by association because she cannot demonstrate a genuine issue of material fact to support her claim of discrimination based on Dr. Seoane's national origin. Dr. Rodriguez's claims for retaliation, whether direct or associational, also fail as a matter of law. With respect to her claim for associational retaliation, Dr. Rodriguez cannot show that she engaged in any protected activity on behalf of Dr. Seoane. Protected activity constitutes either participation in any proceeding under Title VII or opposition to a discriminatory practice under Title VII. Plaintiff must show that she engaged in active, consistent, opposing activities or participated in a proceeding under Title VII. Defendant argues that plaintiff has no evidence that she took any actions to participate in a Title VII proceeding or that she took any actions in opposition to a discriminatory practice in support of Dr. Seoane. Knowledge that Dr. Rodriguez worked with Dr. Seoane on grants and publications does not constitute knowledge on the part of OSU that she engaged in protected activity.

OSU further argues that plaintiff cannot establish a *prima facie* case for retaliation or associational retaliation as to acts that occurred before any alleged exercise of protected activity. The first time that Dr. Rodriguez engaged in protected activity on her own behalf was when she filed her first internal HR complaint on January 3, 2007.

With respect to her claim for OSU's failure to hire her for the tenure track position, OSU argues that she cannot demonstrate any causal link between the decision of the faculty that her candidacy should not be pursued and any protected activity by her. The decision of the nine HSMP faculty members not to select her was unanimous, and Dr. Rodriguez cannot demonstrate that the majority of the decision makers knew of any protected activity on her part.

 OSU maintains that it had a legitimate, non-discriminatory reasons for its actions. With respect to the nonrenewal of Dr. Rodriguez's pain appointment, OSU informed her that funds for the position would only be available for only one year. Both HOPES and HSMP were under new leadership, and Dr. Dembe wanted to change the direction of HOPES.

Finally, OSU argues that as a government agencies, punitive damages are not available against it.

### B.    Plaintiff Dr. Rodriguez

According to Dr. Rodriguez, when Dr. Allard Dembe arrived at OSU's College of Public Health in May 2006, they got off to a good start. Both plaintiff and Dr. Dembe were interested in pursuing an Ohio Medicaid grant proposal that Dr. Rodriguez and Dr. Seoane were developing. Dr. Dembe's treatment of plaintiff changed, however, after he met Dr. Rajesh Balkrishnan, a faculty member with appointments at the College of Public Health and the College of Pharmacy. Dr. Dembe acknowledged that he took Dr.

8

Balkrishnan's comments regarding plaintiff seriously.[3] Thereafter, according to plaintiff, Dr. Dembe began to undermine Dr. Rodriguez's status at CPH. She was demoted from a paid to an unpaid faculty position. Dr. Dembe discouraged Dr. Rodriguez from applying for a tenure track faculty position and terminated her appointment as a Clinical Assistant Professor.

Dr. Rodriguez complained about the retaliatory actions of Dr. Dembe to several colleagues. In a December 2006 letter to Dr. Dembe, Dr. Rodriguez asked him to reconsider his decisions not to renew her appointment with HOPES or permit her to serve as principal investigator on the Ohio Medicaid grant. Shortly thereafter she learned that she would no longer have office space at the College of Public Health. Dr. Rodriguez also contends that Dr. Dembe discouraged students from taking her courses by telling them that she no longer had a contract with OSU. Plaintiff further argues that a less qualified candidate was selected for the faculty position at the urging of Dr. Dembe and Dr. Balkrishnan despite the support for her candidacy from other faculty members.

---

[3]Dr. Seoane, Dr. Rodriguez's significant other, had complained that Dr. Balkrishnan along with other members of the College of Pharmacy faculty had engaged in a discriminatory and retaliatory course of conduct toward him that was obstructing his efforts to obtain grants, publish articles, and receive tenure at the College of Pharmacy. Following an investigation by the OSU Office of Human Resources, Dr. Balkrishan's conduct was found to be inappropriate. Presumably, the ill will between Dr. Balkrishnan and Dr. Seoane prompted Dr. Balkrishnan to meet with Dr. Dembe to express his views regarding plaintiff and Dr. Seoane. Dr. Seoane's allegations concerning the College of Pharmacy are the basis of a separate lawsuit pending in this Court.

On January 3 and 8, 2007, Dr. Rodriguez filed complaints with the OSU Office of Human Resources regarding Dr. Dembe's actions against her. Pl.'s Exhs. J & K. On January 11, 2007, she wrote to Dean Lemeshow and complained of discriminatory and retaliatory treatment. Pl.'s Exh. L. On March 16, 2007, plaintiff filed a charge with the EEOC. Pl.'s Exh. M.

Plaintiff argues that she has demonstrated that sufficient evidence exists to establish a prima facie case of retaliation by OSU management and her co-worker, Dr. Balkrishnan.

Dr. Rodriguez argues that her close association with Dr. Seoane, who filed discrimination and retaliation complaints with OSU and the EEOC, constitutes protected activity on her part. She maintains that the person claiming retaliation need not be the person who engaged in the opposition because Title VII prohibits retaliation against someone so closely related to or associated with the person exercising his rights that it would discourage that person from pursuing those rights.  According to plaintiff. Dr. Dembe testified that Dr. Balkrishnan and he considered Dr. Seoane and Dr. Rodriguez to be acting in association with one another in the form of the complaints brought by Dr. Seoane. Dembe Dep. 33:8-16. Plaintiff maintains that many people at OSU knew about her perceived support of Dr. Seoane and that she had taken action with regard to his complaints. Rodriguez Dep. 263:8-264:4.

Dr. Rodriguez also maintains that she engaged in protected activity in response to how she was treated by OSU and in support of Dr. Seoane's complaints. She

10

threatened to file a charge or other formal complaint alleging discrimination and complained to her colleagues about discrimination against herself and Dr. Seoane.  She contends that her December 21, 2006 letter to Dr. Dembe cannot be interpreted to be anything other than protected activity. Pl.'s Exh. H at 3-4. The letter explicitly references retaliatory actions directed toward her. On January 3 and 8, 2007, plaintiff filed discrimination and retaliation complaints with the OSU Office of Human Resources. On January 11, 2007, she wrote to Dr. Stanley Lemeshow,  Dean of the College of Public Health, to complain of discrimination and harassment. Plaintiff further argues that her protected activity was known to OSU. In addition to letters sent to OSU, Dr. Rodriguez also complained to Dr. Szeinbach, Dr. Seoane, Ms. Watts, Dr. Wewers, and Dr. Arkes in October and November 2006.

Plaintiff maintains that once Dr. Dembe learned of her protected activity, he and Dr. Balkrishnan took adverse action against her. Dr. Dembe's previous support of plaintiff and Dr. Seoane's effort to obtain a grant from Ohio Medicaid was withdrawn, and he attempted to block their efforts to obtain a grant from the Ohio Department of Mental Health. Dr. Dembe stripped Dr. Rodriguez of her privileges and benefits she had as an OSU employee and terminated her employment.

Plaintiff argues that OSU misstates the law regarding the relationship between an EEOC charge and the scope of subsequent litigation. Plaintiff provided a general description of the action or practices that she was complaining of, and this is all that is

required by law. Here, claims in this action are reasonably related to or grow out of the factual allegations in the EEOC charge.

In her December 21, 2006 letter, Dr. Rodriguez outlined the adverse action taken against her by Dr. Dembe:

• Dr. Dembe did renew her appointment as Clinical Assistant Professor at the Center for HOPES, because he wanted take the center in a new direction. Health services research, however, is precisely Dr. Rodriguez's own area of research.

• Dr. Dembe would not permit Dr. Rodriguez to serve as principal investigator for the Ohio Medicaid grant proposal because she was no longer an employee, and he also refused to approve having Dr. Seoane serve as PI in her place. Pl.'s Exh. H at 2.

• Dr. Dembe's position that Dr. Rodriguez could not serve as PI was at odds with the University's policy for Qualifications for Service as a Principal Investigator, which permits a Clinical Assistant Professor to serve as PI if an exception is made in writing by the University Senior Associate Vice President for Research. On September 12, 2006, Dr. Douglas A. Kniss made such an exception, and Dr. Dembe received a copy of his letter indicating that an exception had been made. Pl.'s Exh. Q.

• On December 18, 2006, Dr. Dembe failed to explain why he had discouraged Dr. Rodriguez from applying for the open tenure track position although he sought

12

applicants with similar qualifications and had noted that Dr. Rodriguez had an

excellent publication record. Pl.'s Exh. H at 3.

Dr. Rodriguez also argues that Title VII prohibits respondents from retaliating against

former employees as well as current employees despite defendant's assertion to the

contrary.

As to the fourth prong, plaintiff maintains at a minimum, there is a genuine issue

of material fact concerning whether there is causal connection between her protected

activity and the adverse employment actions taken against her. Plaintiff maintains there

is close temporal proximity between the time that Dr. Dembe learned of her association

with and support of Dr. Seoane from Dr. Balkrishnan and his course of retaliatory

conduct. Furthermore, the day after Dr. Rodriguez sent him a letter complaining about

retaliation, he initiated further retaliatory action. According to plaintiff, this close

temporal proximity is sufficient to establish a causal connection between her protected

activity and the adverse actions taken against her.

Because Dr. Balkrishnan had been reprimanded for his conduct at the College of

Pharmacy, he had a clear motive to retaliate against Dr. Seoane for his complaints. Dr.

Balkrishnan was valuable to Dr. Dembe because he was a prolific researcher, and Dr.

Dembe hoped that Dr. Balkrishnan would help develop a doctoral program. Therefore,

following his meeting with Dr. Balkrishnan, Dr. Dembe decided to take steps necessary

to terminate Dr. Rodriguez's employment. Although Dr. Dembe stated in his deposition

that Dr. Balkrishnan never asked him to act on his complaints about Dr. Rodriguez,

13

plaintiff maintains that this denial was not responsive to any question posed to him and demonstrates a lack of credibility on the part of Dr. Dembe. Plaintiff points to other factors which also indicate a lack of credibility, including Dr. Dembe's contradictory statements concerning the number of occasions he spoke with Dr. Balkrishnan about Dr. Seoane and Dr. Rodriguez. Plaintiff also argues that Dr. Dembe's statements that he planned to take the Center for HOPES in a "new direction," and that Dr. Rodriguez's qualifications were not suitable for the open faculty position demonstrate a lack of credibility on his part.  Two administrators indicated that no change in the mission or direction of the Center has taken place. Additionally, the "new direction" in which Dr. Dembe intended to take the Center was Dr. Rodriguez's area of expertise and that the candidate selected for the faculty position matched the profile of Dr. Rodriguez.

Plaintiff further argues that Dr. Dembe's refusal to permit Dr. Rodriguez to serve as principal investigator on the Ohio Medicaid grant is evidence of a causal connection between her protected activity and the adverse action. Dr. Dembe could have sought permission for Dr. Rodriguez to serve as PI even though she no longer had a salaried appointment. According to plaintiff, in the absence of an absolute policy regarding a particular issue, a decision maker's discretionary decision to take adverse action is evidence of a causal connection between the protected activity and the adverse action. A causal connection is also demonstrated by the temporal proximity between Dr. Dembe's autumn 2006 meeting with Dr. Balkrishnan and his retaliatory actions against

14

Dr. Rodriguez immediately thereafter. Dr. Dembe eliminated Dr. Rodriguez's office space only after she threatened to file a retaliation complaint.

Plaintiff argues that sufficient discrepancies and inconsistencies exist to raise genuine issues of material fact as to whether the reasons that OSU now claims were legitimate, non-discriminatory reasons for its adverse actions against Dr. Rodriguez were actually pretextual. Initially, Dr. Dembe testified that he had met with Dr. Balkrishnan only once, but he later admitted that he spoke with him on a number of other occasions about Dr. Rodriguez and Dr. Seoane. Plaintiff also points to the deposition testimony of Dr. Douglas A. Kniss, OSU's former Senior Associate Vice President for Research. Dr. Kniss attempted to evade questions concerning whether Dr. Rodriguez could have been provided an exception to the general rule that principal investigators must be salaried. Despite his efforts to not admit that an exception may be granted, Dr. Kniss eventually conceded that Dr. Rodriguez could have maintained her status as the principal investigator. Similarly, the decision to take away her office space was not required by OSU policy.

Plaintiff maintains that there is sufficient evidence to create an issue of material fact with respect to whether Dr. Dembe was biased against Dr. Rodriguez because of her national origin. Dr. Rodriguez testified that Dr. Dembe insinuated that her Ph.D. was from a second class university because she attended a school in Barcelona. Dr. Dembe also stated Dr. Rodriguez did not know how to prepare a budget according to U.S. customs. When Dr. Rodriguez asked for an explanation for his retaliatory actions,

15

Dr. Dembe indicated that she would not be able to understand. Dr. Rodriguez also points to a statement that was made to a graduate student who worked with Dr. Seoane that questioned why an Indian student was not working with Dr. Balkrishnan instead of Dr. Seoane. Dean Lemeshow also dismissed Dr. Seoane and Dr. Rodriguez's research proposal concerning Native Americans as not relevant to the College of Public Health. The search committee for the open faculty position also failed to comply with OSU's policy regarding appointment of a diversity advocate.

### III. Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not

16

to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the

opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

## IV.  Discussion

A plaintiff can establish a claim of discrimination under Title VII by producing either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Once the plaintiff has produced credible direct evidence, the burden shifts to the employer to show that it would have taken the employment action of which the plaintiff complains even in the absence of discrimination. *Id.*

When a plaintiff relies on circumstantial evidence for her claim, she has the burden of demonstrating a *prima facie* case of discrimination using the *McDonnell-Douglas* framework. *DiCarlo v. Potter*, 358 F.3d at 414. Once the plaintiff has shown a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003). If the defendant meets this burden, the plaintiff must demonstrate that defendant's stated reason is mere pretext for its true discriminatory motives. *Id.*

### A. Discrimination based on National Origin
#### 1. Direct Evidence

Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Grizzell v. City of Columbus Div. of Police*,  461 F.3d 711, 719 (6th Cir. 2006)(quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Direct evidence, if believed, requires a conclusion by the fact-finder that unlawful discrimination was at least a "motivating factor" for the employer's actions. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Plaintiff argues that Dr. Dembe's statement that her Ph.D. was earned in Barcelona, Spain and not in the United States is direct evidence of national origin discrimination. Plaintiff also relies on Dr. Dembe's statement that she did not know how to prepare a budget for grant in the United States. When plaintiff questioned Dr. Dembe regarding his decision to not renew

her funding, he stated that he knew that it was hard for her to understand. Plaintiff maintains that Dr. Dembe's statements were derogatory.

Defendant maintains that statements concerning plaintiff attending a university in Barcelona does not constitute an expression of discriminatory intent. Attending a university in Barcelona is not equivalent to national origin. Similarly, statements concerning her experience in preparing a budget in the United States relates to her work experience rather than her national origin.

Dr. Dembe's statements are not sufficient to support a finding of direct discrimination. These statements if believed, do not require the conclusion that unlawful discrimination was at least a motivating factor in the employer's action. Comments based on the fact that she attended university in Barcelona could simply reflect the lack of familiarity that Dr. Dembe had with that particular program. Furthermore, attending university in Spain does not necessarily shed light on a student's national origin. Dr. Dembe's statements concerning plaintiff's alleged difficulties with formulating a budget for a grant in the United States also does not reflect on her national origin. Instead, as defendant argues, this statement could refer to his assessment of her prior grant writing experience. Dr. Dembe's statement that he recognized that Dr. Rodriguez did not understand why he made the decisions he had also does not necessarily have anything to do with her national origin. Nothing in the record suggests that his statement was based on his impression that she had difficulty understanding language. Rather, his statement reflected his belief that she failed to

20

understand his reasoning because she disagreed with the decision and conclusions that he reached. Because "[i]solated and ambiguous comments are insufficient to support a finding of direct discrimination" plaintiff cannot demonstrate the existence of direct evidence of discrimination. *White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232 (6th Cir. 2005)(citing *Phelps v. Yale Sec., Inc.*, 968 F.2d 1020, 1025 (6th Cir. 1993)).

## 2.    Indirect Evidence

To demonstrate a prima facie case in a failure to hire case, the plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the desired position; (3) she was considered but not selected for the position; and (4) she and the person who was ultimately hired for the position had similar qualifications. *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 242 (6th Cir. 2005). If plaintiff can establish a prima facie case of discrimination, defendant has the burden of production to articulate a legitimate, non-discriminatory reason for its action. In response to a legitimate, non-discriminatory response, plaintiff must demonstrate that defendant's reasons were pretextual. A plaintiff can demonstrate pretext by showing that the employer's stated reason for the adverse employment action (1) has no basis in fact; (2) was not the actual reason; or, (3) is insufficient to explain the employer's action. *Id.* at 393. Plaintiff can also demonstrate pretext by offering evidence that challenges the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual

motivation." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 578 (6th Cir. 2003).

Dr. Rodriguez alleges several actions by OSU that she maintains were discriminatory: (1) terminating her one-year paid appointment and downgrading her title to "lecturer"; (2) not permitting her to submit her proposal to Ohio Medicaid; and (3) failing to hire her into a tenure track position.

OSU's Decision Not to Renew Dr. Rodriguez One-Year Paid Appointment.[4] OSU relies on the contractual language to show that it intended to only provide Dr. Rodriguez with a one-year contract. Dr. Arkes clearly expressed to Dr. Rodriguez that OSU only had funds to pay her for one year and that monies would not be available the following year. *See* doc. 57-1 at 1-12. Defendant argues that plaintiff cannot demonstrate that she was "qualified for a position" because the position no longer existed. When her appointment ended, no one else was appointed to a paid position as a Clinical Assistant Professor in HSMP or HOPES. Defendant further argues that Dr. Rodriguez cannot show that she was suffered an adverse employment action because when she executed the contract it was clear that it was for one year only. OSU maintains that it had a legitimate, non-discriminatory reason for not renewing Dr. Rodriguez's contract

---

[4]Additionally, plaintiff argues that she was terminated three months prior to the end of her one-year contract. Although plaintiff received notification that her appointment would not be renewed in October, she continued to maintain her position and salary for the remainder of the year long contract. Although she received notice of the nonrenewal of her contract three months prior to the end of the contract, she was not terminated from the contract prematurely.

because HOPES no longer had the funding for the position. Once a permanent director

for HOPES was hired, the funds used to pay Dr. Rodriguez were no longer available. In

his deposition, Dr. Dembe testified that he planned to change the manner in which

HOPES sought funding. Rather than being investigator-driven, he sought to make the

center client-driven, meaning that clients, such as state agencies, would seek out HOPES

to provide research based on issues identified by the agency, rather than the

investigator.[5]

  To demonstrate pretext, plaintiff argues that Dr. Dembe's reasons for failing to

renew her contract were not true. She was not told that the funds were no longer

available when her contract was renewed. Instead, she was told that the Dr. Dembe

wanted to take the center in a new direction. Plaintiff maintains that HOPES has not

changed its focus, and her research interests are in line with those of the center.

  Plaintiff has not come forth with any evidence to overcome defendant's showing

of legitimate, non-discriminatory reason for not renewing her contract.  Her assertions

that the center has not been taken in a new direction are not sufficient to demonstrate

that the stated reasons were pretextual and the real reason for the actions was

discriminatory in nature. She also points to what she characterizes as "Dr. Dembe's

---

  [5]Plaintiff also argues that her membership in HOPES was terminated, but the
unrefuted evidence demonstrates that membership in HOPES did not require any
employment relationship with it or OSU. Dembe Dep. 206:18-22. A person became a
member of HOPES by simply attending one of its brown bag lunches or signing up for
its newsletter. Dr. Rodriguez failed to provide any evidence to the contrary or
demonstrate that her "membership" had been terminated.

derisive remarks about [her] national origin," but as previously stated, these statements made by Dr. Dembe do not demonstrate that he was motivated by discriminatory animus.

Plaintiff also argues that her title was downgraded to that of "lecturer." A change of title without more is not an adverse employment action. *See Kocsis v. Multi-care Managment*, 97 F.3d 876, 886-87 (6th Cir. 1996) ("This court has held that reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.")(citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)).[6]

OSU's Failure to Permit Dr. Rodriguez to Submit the Medicaid Proposal. Plaintiff maintains that defendant treated her differently than similarly situated, non-protected employees by not permitting her to serve as the principal investigator for the Ohio Medicaid grant proposal. Plaintiff maintains that former employees are also protected by Title VII. Plaintiff points to defendant's treatment of Dr. Kenneth Steinman and Dr. Michelle Shipp. Dr. Steinman was permitted to be principal investigator even though his appointment had changed from paid to unpaid. Dr. Ship was compensated solely by funding that she received from grants.

Defendant maintains that Dr. Rodriguez was not eligible to act as a principal investigator. The general policy of CPH and HSMP is that non-salaried auxiliary faculty

---

[6]Plaintiff also maintains that students were discouraged from taking classes that she taught. Plaintiff has not come forth with any admissible evidence to support this allegation.

are not allowed to serve as a principal investigator on grants. Although exceptions to that general policy had been made, the individuals who were permitted to serve as principal investigator were not similarly situated to plaintiff. Dr. Steinman had been a tenure track faculty member until June 2008. Dr. Ship also differed from Dr. Rodriguez significantly. From 2004 to 2007, Dr. Ship had the position of research assistant professor. Persons holding a position of research assistant professor are permitted to serve as principal investigator, and no exception to the general rule was required on her behalf. Defendant further argues that Dr. Dembe and others attempted to find alternatives that would permit Dr. Rodriguez to pursue the grant proposal with Ohio Medicaid.

Here, plaintiff has not produced any evidence to demonstrate that defendant's legitimate, non-discriminatory reason for not allowing the grant proposal to go forward was pretextual. Defendant maintains that the general rule prohibiting non-employees from serving as principal investigator prevented Dr. Rodriguez from going forward with the grant proposal. Because the other individuals that were granted an exception to the general rule were not similarly situated, plaintiff has not shown that defendant's stated reason was not the real reason.

OSU's Decision Not to Hire Rodriguez for the a Tenure Track Position. To make a *prima facie* case of discrimination based on a failure to hire or promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she was considered for and was denied the position; and (4) another

individual of similar or inferior qualifications, who is not a member of the protected class, received the position. *Grizzell v. City of Columbus Division of Police*, 461 F.3d 711 (6th Cir. 2006).

Defendant argues that Dr. Seiber was selected based on the judgment of the HSMP faculty that Dr. Sebier's combination of experience as a tenure track faculty member at Clemson University and his strong publication and teaching record were superior to the other candidates. Plaintiff argues that Dr. Seiber did not have superior qualifications as compared to her. She notes that she had obtained seven grants in amounts that totaled over $158,000. Dr. Seiber had five grants in amounts that totaled just over $117,000.Dr. Rodriguez had taught for six years as an assistant professor, while Dr. Seiber had only taught for four years. Dr. Rodriguez had ten peer-reviewed articles, and Dr. Seiber had nine. Dr. Rodriguez also argues that the faculty reviews of Dr. Seiber were mixed.[7] Dr. Rodriguez maintains that OSU's reasons for its failure to fully consider her for the tenure track position were pretextual because its assertion that Dr. Seiber was more qualified has no basis in fact.

Once the prima facie case has been made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by

---

[7]Plaintiff's characterization of Dr. Casell's faculty evaluation of Dr. Seiber was taken out of context. Plaintiff States that Dr. Caswell noted that Dr. Seiber "[n]eeds to develop a funding strategy. . . .Not sure what his priorities are. . . ." The full sentences read that he "[n]eeds to develop a funding strategy, but's very enthusiastic/ambitious and seems entrepreneurial. . . . He's clearly eager to leave his current position, but is interviewing in multiple places. Not sure what his priorities are in choosing where to land next." Pl.'s Exh. GG; Doc. 66 at 35.

evidence of pretext. The burden of proof, however, always remains with the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). It is important to note that defendant need not prove a nondiscriminatory reason for not selecting Dr. Rodriguez, but need merely articulate a valid rationale for its decision. *Id*. at 514.

Although "qualifications evidence" can be used to show pretext, this evidence must be balanced with an employer's freedom to choose among qualified candidates. *Wren v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). To show pretext on the basis of qualifications evidence, plaintiff "must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful [discrimination], not that other reasonable decision-makers might have [hired] the plaintiffs. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. *See, e.g., Jenkins*, 106 Fed. Appx. at 995 (reversing lower court's grant of summary judgment; in addition to evidence of superior qualifications, the plaintiff provided evidence of "irregularities in the application and selection process," "inconsistencies in the reasons given ... for not hiring her," and "the lack of African-American women in supervisory positions" at the company). On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the

employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006). Here, there is no other probative evidence of discrimination and it cannot be said that Dr. Rodriguez's qualifications are so significantly better than Dr. Seiber's qualifications that no reasonable employer would have chosen the latter applicant over the former. *See also Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006) (explaining that "what matters" is the employer's perception of the applicant's qualifications, and noting that this court affords "great flexibility to employers when selecting management personnel") (citations omitted); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons."); *Wrenn v. Gould*, 808 F.2d 493, 502 ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates."). Because plaintiff has not offered evidence from which reasonable jurors could conclude that OSU's legitimate nondiscriminatory reason for not selecting Dr. Rodriguez for the tenure track position was pretextual, her claim for discrimination cannot withstand defendant's motion summary judgment.

### B.    Retaliation

To make out a prima facie case of retaliation, a plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was

known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Martin v. Toledo Cardiology Consultants*, Inc. 548 F.3d 405, 412 (6th Cir. 2008)(citing *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir.2002)). Once the plaintiff has established a prima facie case of retaliation, the burden shifts to defendant to demonstrate a non-discriminatory reason for its actions. After a showing is made by the defendant, plaintiff has the burden of demonstrating that the reason asserted by the defendant is not the real reason, but rather a pretext for discrimination. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir.2007) (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)(holding that the *McDonnell Douglas* burden-shifting framework applies to retaliation claims)).

Title VII prohibits employers from retaliating against employees for engaging in protected activity:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he *has opposed any practice* made an unlawful employment practice by this subchapter, or *because he has made a charge, testified, assisted, or participated* in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a).

According to plaintiff, her protected activity took two forms: she opposed OSU's unlawful employment practices directed toward Dr. Seoane, and she engaged in protected activity on her own behalf. Dr. Rodriguez's significant other, Dr. Seoane, filed complaints against OSU alleging discrimination and retaliation with OSU and the

29

EEOC. Plaintiff argues that the person claiming retaliation need not be the person engaged in the opposition. Instead, she maintains that Title VII prohibits retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights. Dr. Seoane's protected activity preceded all of the retaliatory actions taken against Dr. Rodriguez. On August 22, 2005, Dr. Seoane requested an investigation be made because of certain discriminatory racial remarks made about him. According to Dr. Rodriguez, many people at OSU were aware of her support of Dr. Seoane and knew that she had taken action on his behalf.

The Supreme Court recently recognized that Title VII prohibits retaliation against someone so closely related to associated with the person exercising his or her statutory rights that it would discourage or prevent that person from pursuing those rights. *Thompson v. North American Stainless, L.P.*, 562 U.S. __ (2011).  A plaintiff establishes a prima facie case of retaliation by showing: (1) participation (in this case, by plaintiff's significant other) in a protected activity known to the defendant; (2) an employment action adverse to the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Torres v. Pisano*, No. 97-cv-3513, 116 F.3d 625, 639 (2d Cir.). *Thomas v. American Horse Shows Assoc., Inc*.  1999 WL 287721, at *13 (E.D.N.Y.,Apr. 23, 1999).[8] A plaintiff may establish proof of a causal connection

---

[8]Because the Sixth Circuit has not previously recognized a claim for third party retaliation, it is necessary to consider how plaintiffs have demonstrated a prima facie showing of third party retaliation in other circuits.

"indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant." *De Cintio v. Weschester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.) (internal quotations and citations omitted).

Here, plaintiff cannot show the requisite causal connection. Dr. Seoane engaged in protected conduct in August 2005 and September 2006.[9] As previously noted, plaintiff's argument that her contract was prematurely terminated in October 2006 is not supported by the evidence of record. Dr. Rodriguez continued to be paid throughout the remainder of the year. In October 2006, she was simply notified that the contract would not be renewed. When the contract was entered into in December 2005, it was clearly stated that the term was for one year only and that there was no presumption of reappointment. It is also noteworthy that the paid position was offered to Dr. Rodriguez *after* Dr. Seoane had filed a complaint concerning OSU's alleged violation of policies on affirmative action, equal employment, and non discrimination in August 2005.

Plaintiff also cannot show that she was treated differently than similarly situated employees. Plaintiff maintains that OSU's actions prohibiting her from serving as principal investigator on grants, not providing her with office space after her paid

---

[9]On September 6, 2006, Dr. Seoane filed a charge a discrimination with the EEOC and the OCRC.

employment ended, and not selecting her for the tenure track position demonstrate that she was treated differently than similarly situated employees. Plaintiff's claim fails, however, because she has not demonstrated that defendant's legitimate, non-discriminatory reasons for its actions were pretextual.

Defendant maintains that Dr. Rodriguez was not eligible to act as principal investigator on grants once her employment with OSU ended. The policy of CPH and HSMP is that non-salaried auxiliary faculty are not allowed to serve as principal investigators on grants. Although plaintiff points to two exceptions, Dr. Rodriguez was not treated any differently than similarly-situated, non-protected employees. According to the affidavit of Ann Florentine, no unpaid auxiliary faculty were given principal investigator status at the College of Public Health during the time that Dr. Rodriguez maintains an exception should have been made for her. Dr. Steinman, to whom Dr. Rodriguez wishes to compare herself, was a tenure track faculty member until June 2008. Dr. Lemeshow testified in his deposition that it was very unusual to provide PI status to someone who does not have a paid position with the university. Lemeshow Dep. 53:14-54:16. Dean Lemeshow asked OSURF to grant PI status one time to a non-salaried faculty member who was a very senior researcher in the biostatistics center. *Id.* at 72:17-74:3. Plaintiff's reliance on Dr. Michelle Ship is also misplaced, according to defendant, because she held the position of research assistant professor. A person holding the position of research assistant professor can always serve as PI, so an exception was not required on behalf of Dr. Ship. Wewers Dep. 73:22-74:18. Plaintiff has

32

not met her burden of showing that the reasons that she was denied PI status were pretextual.

The testimony that the College of Public Health did not assign offices to non-salaried auxiliary faculty members was undisputed. Plaintiff points to no other non-salaried, auxiliary faculty member that was assigned an office in the College of Public Heath. Although plaintiff was permitted to use an office in 2005, she was not formally assigned office space. Consequently, plaintiff has not met her burden of showing that the reasons she was no longer provided with office space were pretextual.

Plaintiff's retaliation claim based on OSU's failure to hire her for the tenure track faculty position fails for the reasons discussed with respect to her claim for discrimination based on national origin.

Dr. Rodriguez also contends that she was retaliated against for protected activity she engaged in on her own behalf.  Dr. Rodriguez threatened to file a charge or other formal complaint alleging discrimination and complained to others about discrimination against herself and Dr. Seoane. Dr. Rodriguez asserts that she complained about Dr. Dembe's retaliatory conduct to several of her colleagues, including Dr. Szeinbach, Dr. Seoane, Ms. Renee Watts, Dr. Mary Ellen Wewers, and Dr. Hal Ares in October and November 2006.  She also maintains that her December 21, 2006 letter to Dr. Dembe, which complained of retaliatory conduct and violations of University policy and applicable laws, constituted protected activity.

OSU argues that Dr. Rodriguez also cannot establish a prima facie case of retaliation as to any protected activity that she engaged in on her own behalf because the allegedly adverse actions occurred prior to the filing of her January 3, 2007 internal HR complaint. Defendant maintains that plaintiff's December 21, 2006 letter to Dr Dembe summarizing their recent discussions fails to mention discrimination or retaliation for her protected activity. The letter stated:

> Unless you indicate prior to January 1, 2007 that you are willing to reverse your unexplained and unjustified decisions, I will be filing a complaint with the OSU Office of Human Resources and state and federal authorities. Further, I will consider any further adverse actions toward me to be retaliatory in nature and thus to constitute additional violations of University policy and applicable law.

Pl.'s Dep. Exh. 548. Defendant maintains that the letter's failure to allege discrimination means that it does not qualify as protected activity. OSU also points to the fact that two of its actions that plaintiff maintains were retaliatory occurred *prior* to this letter being written. Dr. Rodriguez had been informed that OSU would not be renewing her paid appointment and that she would be eligible to serve as principal investigator prior to sending this letter. OSU maintains that Dr. Dembe was investigating whether or not non-salaried auxiliary faculty members were provided offices prior to her letter.

Although plaintiff's letter cannot not be used to demonstrate that acts occurred before it was written were retaliatory, the letter arguably constitutes protected activity, and it can be used to establish a prima facie case of retaliation for  events occurring after the letter was written. As a result, only those actions that occurred after she sent her

34

December 21, 2006 letter are relevant to plaintiff's claim for retaliation. Plaintiff

maintains that OSU's actions prohibiting her from serving as principal investigator on

grants, not providing her with office space after her paid employment ended, and not

selecting her for the tenure track position were retaliation against her for engaging in

protected activity.[10] Plaintiff's claim fails because she has not demonstrated that

defendant's legitimate, non-discriminatory reasons for its decisions were pretextual as

previously discussed in relation to her claim for third party-retaliation.

### C. Co-Worker Retaliation

Plaintiff maintains that her co-worker Dr. Balkrishnan engaged in unlawful

retaliation against her. An employer will be liable for the co-worker retaliatory conduct

when:

> (1) the coworker's retaliatory conduct is sufficiently severe so as to
> dissuade a reasonable worker from making or supporting a charge of
> discrimination, (2) supervisors or members of management have actual or
> constructive knowledge of the coworker's retaliatory behavior, and (3)
> supervisors or members of management have condoned, tolerated, or
> encouraged the acts of retaliation, or have responded to the plaintiff's
> complaints so inadequately that the response manifests indifference or
> unreasonableness under the circumstances.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 347 (6th Cir. 2008).

---

[10]Plaintiff also relies on the temporal proximity between her protected activity
and the adverse employment actions to demonstrate a causal connection. While it
appears doubtful that plaintiff has adequately demonstrated a causal connection, for the
purposes of this Order the Court will assume that she has because her failure to
demonstrate that defendant's legitimate, non-discriminatory rationale for its decisions
were pretextual is clearly dispositive of her claim.

Plaintiff argues that Dr. Nahata used his position as Dr. Seoane's division chair to divert a grant to Dr. Nahata and Dr. Balkrishnan that Dr. Seoane and Dr. Rodriguez were led to believe would be granted to them by the Ohio Department of Mental Health. Plaintiff also relies on statements Dr. Balkrishnan made to Dr. Dembe criticizing she and Dr. Seoane for the basis of her co-worker retaliation claim. Dr. Dembe testified that initially he provided encouragement to Dr. Rodriguez with respect to the Medicaid proposal. Dembe Dep. 97:7-10. He also offered technical assistance and other support to improve the grant proposal. *Id.* at 118:19-21. Dr. Rodriguez maintains that her working relationship with Dr. Dembe remained positive until autumn of 2006. At that time, Dr. Balkrishnan arranged a meeting with Dr. Dembe to discuss his concerns about Dr. Rodriguez and Dr. Seoane. Following a human resources investigation, Dr. Balkrishnan was found to have engaged in inappropriate conduct. Dr. Balkrishnan warned Dr. Dembe that plaintiff and Dr. Seoane were creating problems at the College of Pharmacy. Dembe Dep. 40:18-42. Plaintiff maintains that the statements made by Dr. Balkrishnan were sufficiently severe as to dissuade a reasonable worker from making or supporting a charge of discrimination and constitute the first prong of her prima facie case of co-worker retaliation.

Here, plaintiff's prima facie claim fails because she cannot show that Dr. Balrishnan's conduct was sufficiently severe to be actionable under Title VII. Title VII does not set forth a general civility code for the American workplace. *Burlington*

36

*Northern & Santa Fe Ry. Co. V. White*, 548 U.S. 53, 68 (2006). A plaintiff must demonstrate

material adversity or significant harm rather than trivial harm:

> An employee's decision to report discriminatory behavior cannot
> immunize that employee from those petty slights or minor annoyances
> that often take place at work and that all employees experience. The
> antiretaliation provision seeks to prevent employer interference with
> "unfettered access" to Title VII's remedial mechanisms. It does so by
> prohibiting employer actions that are likely "to deter victims of
> discrimination from complaining to the EEOC," the courts, and their
> employers. And normally petty slights, minor annoyances, and simple
> lack of good manners will not create such deterrence.

*Owen*, at * 6 (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68

(2006)(quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). For conduct to be

actionable, "the workplace must be permeated with 'discriminatory intimidation,

ridicule or insult' sufficiently severe or pervasive to alter the conditions of employ-

ment." *Owen v. Peake*, No. 3:02CV179, 2008 WL 4449011 at * 7 (S.D. Oh. Sep. 26,

2008)(quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57. 65-67 (1986). The Sixth Circuit

instructs courts to consider:

> the frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work performance.

*Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006). In *Owen v. Peake*, the court

held that an employee's allegations that she was embarrassed and humiliated by a co-

worker who yelled at her in front of other co-workers and patents, left notes on her

computer monitor regarding her time records and leave requests, announced her leave

requests and told co-workers they would have to cover her hours, submitted false

complaints to her supervisor concerning work hours, and scheduled her to work three Christmases in a row were not sufficiently severe to constitute unlawful retaliatory conduct. *Owen*, at * 1. To be actionable, retaliation must be far more severe than that alleged by plaintiff. *See e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 348 (finding allegation of setting fire to car sufficiently serious to withstand summary judgment); *Moore v. City of Philadelphia*, 461 F.3d 331, 352 (3d Cir.2006) (holding that plaintiff, who had received three "sick checks" in his first five months of medical leave as compared to over 30 "sick checks"– approximately one every other day–in the two months after he filed a lawsuit, had alleged sufficiently severe conduct); *Ferguson v. Associated Wholesale Grocers*, Inc., 469 F. Supp. 2d 961, 971 & n. 14 (D. Kan. 2007) (finding that having one's car tires slashed; receiving threatening phone calls; being called names such as "whore", "bitch", "slut" and "liar"; and being hit in the back with soda can sufficient to indicate materially adverse co-worker harassment acts).

The incidents that plaintiff relies on–Dr. Nahata's efforts to obtain grant funding that she and Dr. Seoane had been seeking and Dr. Balkrishnan's criticisms of her to Dr. Dembe–were not so materially adverse as to alter the conditions of her employment. Rather, they appear to reflect a competitive environment where professors are required to seek limited sources of grant funding. Complaining about a colleague to her supervisor is a frequent occurrence in many work settings. Furthermore, there is nothing in the record to suggest that Dr. Balkrishnan was motivated by Dr. Rodriguez's national origin when he spoke to Dr. Dembe about Dr. Rodrigeuz and Dr. Seoane. Her

38

claim also fails because the incidents on which she relies for her retaliation claim occurred prior to her engaging in any protected conduct on her own behalf, and Dr. Rodriguez has not shown that she engaged in any protected conduct on behalf of Dr. Seoane.

### V.    Conclusion

For the reasons stated above, defendant The Ohio State University's ("OSU") August 31, 2010 motion for summary judgment (doc. 57) is GRANTED. The Clerk of Court is DIRECTED to enter JUDGMENT for defendant.

s/ Mark R. Abel
United States Magistrate Judge
